## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

---------------------------------------------------------
SHIVA STEIN,

      Plaintiff,

v.

VECTREN CORP., DERRICK BURKS, CARL L. CHAPMAN, JAMES H. DEGRAFFENREIDT, JR., JOHN D. ENGELBRECHT, ANTON H. GEORGE, ROBERT G. JONES, PATRICK K. MULLEN, R. DANIEL SADLIER, MICHAEL L. SMITH, TERESA J. TANNER, JEAN L. WOJTOWICZ,

      Defendants.
---------------------------------------------------------

Civil Action No. 3:18-cv-117

**COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Vectren Corp. ("Vectren or the "Company"), the members Vectren's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Vectren by certain affiliates of CenterPoint Energy, Inc. ("CenterPoint").

2.     Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading preliminary proxy statement (the "Proxy") to be filed on June 15, 2018 with the SEC and disseminated to Company stockholders.  The Proxy recommends that Company stockholders vote in favor of a proposed transaction whereby Pacer Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of CenterPoint, will merge with and into Vectren, with the Company continuing as a wholly owned subsidiary of CenterPoint (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Vectren common share issued and outstanding will be converted into the right to receive $72.00 in cash (the "Merger Consideration").

3.     As discussed below, the consideration Vectren stockholders stand to receive in connection with the Proposed Transaction and the process by which Defendants propose to consummate the Proposed Transaction are fundamentally unfair to Plaintiff and the other common stockholders of the Company.  Defendants have now asked Vectren's stockholders to support the Proposed Transaction in exchange for inadequate consideration based upon the materially incomplete and misleading representations and information contained in the Proxy, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy contains materially incomplete and misleading information concerning the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.  The financial projections were also utilized by the financial advisor of the Company, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch"), in conducting the valuation analyses in support of the fairness opinion.

4.     It is imperative that the material information that has been omitted from the Proxy is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Vectren's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Vectren in incorporated in this District.

## PARTIES

9.     Plaintiff is, and has been at all relevant times, the owner of Vectren common stock and has held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Derrick Burks has served as a member of the Board since October 2017.

11. Individual Defendant Carl Chapman ("Chapman") has served as a member of the Board since 2009, and was elected as Chairman of the Board effective May 11, 2011. Chapman has also been the Company's President and Chief Executive Officer ("CEO") since June 2010, and was President and Chief Operating Officer ("COO") from November 1, 2007 to May 31, 2010, and COO from August 1, 2004 to June 2010.

12. Individual Defendant James H. Degraffenreidt, Jr. has served as a director of the Company since 2010.

13. Individual Defendant John D. Engelbrecht has served as a director of the Company since 2000.

14. Individual Defendant Anton H. George has served as a director of the Company since 2000.

15. Individual Defendant Robert G. Jones has served as a director of the Company since 2011.

16. Individual Defendant Patrick K. Mullen has served as a director of the Company since 2014.

17. Individual Defendant R. Daniel Sadlier has served as a director of the Company since 2003.

18. Individual Defendant Michael L. Smith has served as a director of the Company since 2006.

19. Individual Defendant Teresa J. Tanner has served as a director of the Company since 2015.

20. Individual Defendant Jean K. Wojtowicz has served as a director of the Company since 2000.

21. Defendant Vectren is incorporated in Delaware and maintains its principal offices at One Vectren Square, 200 N.W. Riverside Drive, Evansville, Indiana 47708-1251. The Company's common stock trades on the New York Stock Exchange under the symbol "VVC."

22. The defendants identified in paragraphs 10-21 are collectively referred to as the "Defendants".

## SUBSTANTIVE ALLEGATIONS

### A.  The Proposed Transaction Undervalues Vectren

23. Vectren is an energy holding company, segregates its operations into groups, including the Utility Group, the Nonutility Group, and Corporate and Other. The Company's subsidiary, Vectren Utility Holdings, Inc., serves as the intermediate holding company for three public utilities: Indiana Gas Company, Inc., Southern Indiana Gas and Electric Company and Vectren Energy Delivery of Ohio, Inc. The Company, through Vectren Enterprises Inc. (Enterprises), is involved in non-utility activities in two primary business areas: Infrastructure Services and Energy Services. Infrastructure Services provides underground pipeline construction and repair services. Energy Services provides energy performance contracting and sustainable infrastructure, such as renewables, distributed generation, and combined heat and power projects.

24. On June 19, 2018, CenterPoint and the Company jointly announced the Proposed Transaction:

> HOUSTON and EVANSVILLE, Ind., April 23, 2018 /PRNewswire/ -- CenterPoint Energy, Inc. (NYSE: CNP) and Vectren Corporation (NYSE: VVC) today announced they have entered into a definitive merger agreement to form a leading energy delivery, infrastructure and services company serving more than 7 million customers across the United States.
>
> Under the terms of the agreement, which have been unanimously approved by both CenterPoint Energy's and Vectren's Boards of

5

> Directors, Vectren shareholders will receive $72.00 in cash for each share of Vectren common stock. CenterPoint Energy will also assume all outstanding Vectren net debt.
>
> \* \* \*
>
> Following the completion of the merger, the combined company expects to execute a unified business strategy focused on the safe and reliable delivery of electricity, natural gas and related services to customers.
>
> \* \* \*
>
> At the closing of the transaction, Scott M. Prochazka will serve as president and CEO of the combined company. The full executive team for the combined company will be announced prior to or in conjunction with the closing of the merger. The natural gas utilities operations of the combined company, as well as that businesses' lead executive, will be headquartered in Evansville. Additionally, CenterPoint Energy will establish a chief business officer for Vectren's electric business who will directly report to CenterPoint Energy's CEO and spearhead southwestern Indiana's electric grid modernization and generation transition initiatives recently underway. In addition to utility field employees, CenterPoint Energy will retain key operational activities in support of the utilities in Evansville.
>
> Integration teams co-led by leaders from each company are in the process of being established and will be centered in Evansville. These teams will be responsible for identifying best practices and facilitating the integration of the two companies.
>
> \* \* \*

25.     The Merger Consideration undervalues the Company's shares in light of its recent financial performance and prospects for future growth. More specifically, Vectren reported first quarter 2018 net income of $63.5 million, or $0.76 per share, compared to net income of $55.4 million, or $0.67 per share, in the first quarter of 2017.

26. Accordingly, the Company is well-positioned for financial growth and the Merger Consideration fails to adequately compensate Company stockholders by cutting off their ability to benefit from the Company's continued growth.

27. Despite the inadequate Merger Consideration, the Board has agreed to Proposed Transaction. It is therefore imperative that Vectren's stockholders are provided with the material information that has been omitted from the Proxy, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B. **The Materially Incomplete and Misleading Proxy**

28. On June 15 2018, Vectren filed the Proxy with the SEC in connection with the Proposed Transaction. The Proxy was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

29. With respect to the financial projections disclosed in the Proxy, (pages 40 of the Proxy), the Proxy fails to provide material information.

30. Specifically, the Proxy provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) EBITDA and (2) Capital Expenditures, excluding AFUDC equity, but fails to provide: (i) the line items used to calculate the non-GAAP

measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Proxy 40.

31. When a company discloses non-GAAP financial measures in a proxy statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

32. Thus, to cure the Proxy the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information on page 40, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures. Such forecasts are necessary to make the non-GAAP forecasts included in the Proxy not misleading.

33. With respect to the *Discounted Cash Flow Analysis*, the Proxy also fails to disclose: (i) the projected terminal value for the Company; (ii) the value of the net debt used; and (iii) the inputs and assumptions underlying the range of discount rates ranging from 5.0% to 5.8% for the gas utility business; 4.7% to 5.4 % for the electric utility business, and 7.8% to 9.6% for the non-regulated business.

34. With respect to the *Background of the Merger*, the Proxy fails to state whether the confidentiality agreements entered into with the six potential bidders contained "don't-ask-don't-

waive" ("DADW") provisions, and whether those restrictive provisions are still in effect or if they expired when the Proposed Transaction was announced. Proxy at 19. The omission of the existence of the DADW provisions renders the Proxy misleading because it creates a false impression that any of the six potential bidders could have made a superior offer for the Company.

35. Stockholders require this material since the Board's unanimous recommendation that stockholders vote in favor of the Proposed Transaction was based, in part, on the following:

- reviewed certain internal financial and operating information with respect to the business, operations and prospects of the Company furnished to or discussed with BofA Merrill Lynch by the management of the Company, including certain financial forecasts relating to us prepared by the management of the Company, referred to herein as Company management forecasts and described in "The Proposed Merger–Forward-Looking Financial Information" beginning on page 40

\* \* \*

- discussed the past and current business, operations, financial condition and prospects of the Company with members of senior management of the Company;

\* \* \*

Proxy at 32.

36. In sum, the omission of the above-referenced information renders statements in the Proxy materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that Proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

39. Defendants have issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy and the use of their name in the Proxy, which fails to provide critical information regarding, amongst other things: the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

40. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

41. Defendants were, at the very least, negligent in preparing and reviewing the Proxy. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

42. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

43. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

44. The Individual Defendants acted as controlling persons of Vectren within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Vectren, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly

or indirectly, the decision making of Vectren, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

45. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

46. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Vectren, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy.

47. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

48. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

49. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons,

these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

50. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

A. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

B. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

C. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: July 9, 2018                                             Respectfully submitted,

**RILEY WILLIAMS & PIATT, LLC**

13

| | |
|---|---|
| **OF COUNSEL:**<br><br>Gloria Kui Melwani<br>**WOLF HALDENSTEIN ADLER**<br>**FREEMAN & HERZ LLP**<br>270 Madison Avenue<br>New York, New York 10016<br>Tel: 212-545-4600<br>Fax: 212-686-0114<br>melwani@whafh.com | By: */s/ James A. Piatt*<br>William N. Riley (#14941-49)<br>James A. Piatt (#28320-49)<br>301 Massachusetts Avenue, Suite 300<br>Indianapolis, IN 46204<br>Tel.: (317) 633-5270<br>Fax: (317) 426-3348<br>wriley@rwp-law.com<br>jpiatt@rwp-law.com<br><br>*Attorneys for Plaintiff* |